IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | 8:17CR28 |
| vs. | |
| GREGORY BARTUNEK, | FINDINGS AND RECOMMENDATION |
| Defendant. | |

This matter is before the Court on multiple motions filed by Defendant, Gregory Bartunek.[1] These motions include the following: Motion to Suppress (Filing No. 47); Motion to Amend (Filing No. 48); Motion to Suppress Statement (Filing No. 69); Motion to Suppress (Filing No. 70); Motion to Suppress (Filing No. 71); Motion to Suppress (Filing No. 72); Motion to Dismiss (Filing No. 74); Motion for Order to Release Property (Filing No. 79);[2] Motion to Suppress (Filing No. 80); Motion to Suppress (Filing No. 82); Motion to Suppress (Filing No. 85); Motion to Compel (Filing No. 100); Motion for Reconsideration and Motion to Compel (Filing No. 158); and Motion for *Franks* Hearing.[3] (Filing No. 178.)

Bartunek is charged in a Two Count Indictment with Distribution of Child Pornography in violation of 18 U.S.C. 2252A(a)(2) and Possession of Child Pornography in violation of 18 U.S.C. 2252(a)(4)(B). (Filing No. 1.) Bartunek seeks to suppress all evidence and statements obtained as a result of the search of his home on May 25, 2016, in Omaha, Douglas County, Nebraska and his arrest at his home on February 16, 2017, in Omaha, Douglas County, Nebraska. (Filing Nos. 47, 48, 69, 70, 71, 72, 74, 79, 80, 82, 85, 100, 158.)

---

[1] At the evidentiary hearing held in this matter, the Court ruled on several issues contained within Bartunek's motions, which are not addressed in this Findings and Recommendation. The Court's rulings on those issues can be found in the transcript of the hearing.

[2] Bartunek withdrew the Motion to Return Property (Filing No. 79) at the evidentiary hearing. (TR. 165.) Therefore, the motion will not be addressed in this Findings and Recommendation.

[3] The Motion for *Franks* Hearing was filed subsequent to the evidentiary hearing held in this matter.

The Court held an evidentiary hearing on June 22, 2017. Bartunek was present with his standby counsel, Michael Maloney. The United States was represented by Assistant United States Attorney, Michael Norris. The Court heard testimony of Deputy United States Marshal John Huggins, Omaha Police Officer David Pecha, Deputy Untied States Marshal Christopher Cicha and Paul Bartunek. A transcript (TR.) of the hearing was prepared and filed on July 8, 2017. ([Filing No. 177](#).) This matter is now fully submitted and ready for decision.

## BACKGROUND

A search warrant was executed on Bartunek's house on May 25, 2016. (TR. 50.) While in the bedroom of the home, officers observed dolls with plastic penises affixed to them. (TR. 52, Ex. Nos. 5, 6.) The dolls were clothed in children's underwear. Officers also observed children's underwear in a chest in the bedroom. (TR. 60.) Several electronic devices were seized from the residence, as well as a cox cable bill so officers could verify who lived at the premises. (TR. 56, 59.) During the execution of the warrant, photographs were taken to document the condition of the residence and to possibly serve as evidence of the crime being charged. (TR. 57.)

Bartunek was not present when officers entered his residence to execute the search warrant on his home, but he arrived after the search had been completed. (TR. 61.) When Bartunek arrived outside the residence, Officer Pecha was waiting and explained to him that a search warrant had been executed on his residence. Officer Pecha told Bartunek that they wanted to speak to him. (TR. 62.) Officer Pecha testified that he never told Bartunek that he had to speak to him or that he was in custody. (TR. 63 and 70.) Officer Pecha did not give *Miranda* warnings to Bartunek. Officer Pecha testified that during their conversation, Bartunek inquired whether he should have an attorney, but did not say that he wanted an attorney. (TR. 70-71.) After speaking to Officer Pecha for a few minutes, Bartunek definitively requested an attorney. Officer Pecha then terminated the interview and left Bartunek's residence. (TR. 70.) Bartunek was not arrested at that time. (TR. 69-70.)

On February 16, 2017, Deputy Cicha, a deputy United States Marshal, was assigned to execute an arrest warrant for Gregory Bartunek. (TR. 80-81.) Deputy Cicha understood the

arrest warrant to be for possession or distribution of child pornography. (TR. 81.) The officers arrived at Bartunek's home a little after 7:00 a.m. on February 16, 2017. (TR. 83.) When officers arrived, some of the officers went to the front door and others went to the back door, announcing their presence. (TR. 83-84.) An individual came out of a door on the east side of the house from the basement. (TR. 84.) Officers told that individual that they were looking for Gregory Bartunek. The individual confirmed that Bartunek lived at the residence, and officers then went into the basement to make sure no one else was in the basement. (TR. 84.)

Officers continued to announce their presence at the front door of the residence for several minutes. (TR. 86, 87.) When no one responded, officers began ramming the front door. (TR. 87.) After the third time of ramming the door, Bartunek told officers he was coming to the door. (TR. 87.) Bartunek was unable to open the door, however, so Deputy Cicha kicked the door open. (TR. 88.) Once officers opened the door, they handcuffed Bartunek and informed him that a warrant had been issued for his arrest. (TR. 17.) Officers took Bartunek, who was dressed only in a robe, underwear, t-shirt, and house slippers, outside to the front porch. (TR. 17, 88.) While on the porch, Bartunek asked about his clothes. (TR. 90.) Bartunek was then placed in Deputy Cicha's car. (TR. 89.) While in the car, Deputy Cicha showed Bartunek the arrest warrant. (TR. 89, 92.) Deputy Cicha did not give Bartunek *Miranda* warnings at that time because he was not asking Bartunek any questions. (TR. 92.)

Due to the cold conditions outside, officers determined that they had to go inside the house to get clothes for Bartunek. (TR. 17.) Based on Bartunek not coming to the door, which heightened officers' concerns for their safety, officers decided to perform a "sweep" of the residence to make sure there was nothing inside that could hurt them. (TR. 18.) Deputy Huggins, who has been with the Marshal's Office for twenty-five years, led the sweep of Bartunek's residence. (TR. 18-19.) Deputy Huggins observed dolls in the corner of the bedroom of the home, as well as a handgun and bullets on top of a dresser. (TR. 22-23.) The middle drawer of the dresser was open, and Deputy Huggins noticed that the drawer was full of children's underwear. (TR. 22-23.) Deputy Huggins retrieved pants for Bartunek, which were by the desk in the front room. (TR. 24.) Deputy Huggins testified that he took pictures of the dolls after the sweep had been completed. (TR. 28.) Deputy Huggins also took a picture of the gun. (TR. 28-29.)

Following his arrest, Bartunek was transported to Douglas County Corrections. (TR. 92-93.) When he arrived at Douglas County Corrections, Bartunek refused to answer any booking questions, asserting he was "pleading the fifth." (TR. 93-94.)

## ANALYSIS[4]

**1. Motion to Suppress Evidence Seized During Execution of the Search Warrant (Filing Nos. 47 and 48)**

Bartunek argues that the evidence seized during the execution of the search warrant should be suppressed because the warrant lacked particularly, was overly broad, was issued without probable cause, and contained stale information. Bartunek also asserts that the affidavit and application for the search warrant were deficient, illegal and invalid.[5]

Bartunek argues that the warrant lacked particularity because he did not control or reside in the basement of the house, and claims that the application was based on false information because it indicated that he controlled the "premises." Before executing the warrant, officers investigated the house by searching the records of the Douglas County Assessor. The records listed the residence as a single family dwelling. Officers also checked utility records, which showed that one person, *i.e.* Bartunek, was responsible for the utilities. Officers drove by the house several times in advance of executing the warrant and observed that there was only one address on the house and one mailbox. In short, nothing indicated that there was a separate residence being maintained in Bartunek's home. Therefore, the argument that the warrant and/or affidavit and application lack particularity and/or a falsity due to a second residence being in the

---

[4] Having reached its conclusions, the Court has considered all evidence received, including, but not limited to, the affidavits submitted by Bartunek.

[5] Barunek appears to challenge the search of the basement. Bartunek has admitted that he rented the basement to another individual and this individual had exclusive control over the basement. Therefore, Bartunek does not have standing to challenge the search of the basement. *See United States v. Gomez,* 16 F.3d 254 (8th Cir. 1994) (stating that a defendant moving to suppress evidence seized as a result of an alleged illegal search has burden of proving a reasonable expectation of privacy in the area searched). Bartunek has not shown that he had a reasonable expectation of privacy in the basement.

4

house is without merit. *See United States v. Davis,* 557 F.2d 1239 (8th Cir. 1977) (upholding search warrant for an address which later turned out to include two separately occupied apartments where officers had reason to believe it was only a single-family dwelling under the control of one person).

Bartunek also argues that the search warrant was overly broad because officers took items and photographs unrelated to the list of items to be searched for in the warrant. Bartunek claims that if the items were not pictures of child pornography, or did not show the condition of and/or the location of items expressly listed in the warrant, the photographs were beyond the scope of the warrant. While not completely clear, Bartunek appears to complain about all photographs taken at the residence, as well as the removal of a utility bill from his home. Bartunek's argument is misplaced.

The photographs taken of prescription bottles and the utility bills that were seized from the residence are items identifying who was occupying the residence. Photographing items and seizing utility bills to show venue was authorized by the search warrant and the practice is supported by case law. *See United States v. Romo-Corrales,* 592 F.3d 915, 920 (8th Cir. 2010) ("Venue evidence includes items such as bills, receipts, and letters"); *United States v. Blakeney,* 942 F.2d 1001 (6th Cir. 1991) (stating that "indicia of occupancy" includes any document or object that would tend to provide the true identity of the owners or occupants of the premises). Likewise, officers did not improperly photograph the dolls and drawer of children's underwear. Officers were lawfully on the premises and the items photographed were in plain view. *See United States v. Espinoza,* 641 F.2d 153, 167 (4th Cir. 1981) (finding that where agent was lawfully on the premises in the execution of a valid search warrant, the agent did not exceed the scope of the warrant by making the photographs of what he saw in plain view).

Bartunek also argues that the search warrant was issued without probable cause. "Probable cause means a fair probability that contraband or evidence of a crime will be found in a particular place, given the circumstances set forth in the affidavit." *United States v. Huyck,* 849 F.3d 432, 439 (8th Cir. 2017) (quotation omitted). When reviewing the search warrant, the Court must look at the totality of the circumstances set forth in the affidavit. *See United States v. Etherridge,* 165 F.3d 655 (8th Cir. 1999). As long as the issuing judge had a substantial basis for

concluding the search would uncover evidence of wrongdoing, the Fourth Amendment requires no more. *Illinois v. Gates,* 462 U.S. 213 (1983).

The purpose of the warrant was to locate images and evidence of child pornography. The affidavit and application for the warrant stated that the National Center for Missing and Exploited Children CyberTipline received information from Omegle.com, a social networking chat website, that one of its users had uploaded a video of child pornography. (Ex. No 1.) Bartunek asserts that the information reported by Omegle.com was only "suspected" child pornography and, because the information was not verified for accuracy, it could not be used to support a search warrant. Bartunek's argument lacks merit. A screenshot of the uploaded video was reviewed by the officer who applied for the search warrant. The image shows a young boy holding an erect penis within a couple of inches of his open mouth. This image demonstrated that there was a fair probability that images of child pornography would be found at Bartunek's residence.[6]

Bartunek also argues that the search warrant was based on stale information and was thus unsupported by probable cause. Bartunek complains that the affidavit used to support the warrant contained stale information about a "knock and talk" that occurred years earlier. The affidavit also mentions an ongoing investigation regarding Bartunek's possible sexual assault of a seven year old. Bartunek further argues that the upload of the video occurred on March 26, 2016, but the affidavit and application was not presented to the Court until May 23, 2016, two months after the alleged upload. Bartunek contends that there was nothing in the affidavit and application to indicate that the child pornography would still be on the computer.

---

[6] Bartunek appears to assert that Omegle.com is an "informant" subject to legal requirements of showing reliability. He is incorrect. Federal law requires anyone engaged in providing electronic communication services or remote computing services with knowledge that someone has used their services to facilitate the possession and/or distribution of child pornography to provide all information regarding the incident to the CyberTipline of the National Center for Missing and Exploited Children. 18 U.S.C. § 2258A. The National Center for Missing and Exploited Children is obligated under 42 U.S.C. § 5773(b)(1)(p) to transmit the report, including relevant images and information, to the appropriate international, Federal, State or local law enforcement agency for investigation.

"A warrant becomes stale if the information supporting the warrant is not sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search." *Huyck,* 849 F.3d at 439. "There is no bright-line test for determining when information in a warrant is stale." *Id.* Instead, courts must look to "the lapse of time since the warrant was issued, the nature of the criminal activity, and the kind of property subject to the search." *Id.*

The Court concludes that the information pertaining to the "knock and talk" and sexual assault investigation was not stale. This information was relevant to a common sense determination as to whether there was a fair probability that child pornography would be found in Bartunek's home. The Eighth Circuit Court of Appeals has previously concluded that given the compulsive nature of the crime of possession of child pornography, "information that might, in other circumstances, be deemed stale can have substantial probative value." *United States v. Hyer,* 498 Fed. Appx. 658, 660 (8th Cir. 2013) (finding that the defendant's prior child pornography activities and use of a computer, even though several years old, was relevant to a common sense determination about whether to issue a warrant when that information was coupled with information showing that the defendant had likely downloaded child pornography to a computer very recently).

Even disregarding the "knock and talk" information and the ongoing investigation information, there was still sufficient probable cause for issuance of the warrant. *See United States v. Jeanetta,* 533 F.3d 651, 654 (8th Cir. 2008) ("When reviewing the sufficiency of an affidavit to support a finding of probable cause, we consider the totality of the circumstances"). The affidavit and application included information that an upload of a video containing child pornography had occurred at Bartunek's residence. The fact that the search warrant was issued two months after the child pornography was uploaded does not render the warrant stale. *See United States v. Huyck,* 849 F.3d 432, 439 (8th Cir. 2017) (finding that search warrant issued four months after the defendant's had browsed a child pornography website was not stale); *United States v. Lemon,* 590 F.3d 612, 614 (8th Cir. 2010) (finding search warrant issued eighteen months after discovering information related to child pornography was not stale). In fact, the Eighth Circuit has observed that the nature of the crime of possession of child pornography supports a common sense finding that "images of child pornography are likely to be hoarded by

persons interested in those materials." *United States v. McArthur*, 573 F.3d 608, 613-14 (8th Cir. 2009). Therefore, the Court finds that Bartunek's motion to suppress the evidence seized during execution of the search warrant should be denied.

### 2. Request for *Franks* Hearing (Filing Nos. 47, 48 and 178)

A defendant is entitled to a *Franks* hearing if (1) he makes a substantial preliminary showing that the affiant intentionally or recklessly included a false statement in the warrant affidavit, and (2) the false statement was necessary to the finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id.* at 171. "There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Id.*

In the case at hand, Bartunek has not made a preliminary showing necessary for a *Franks* hearing. Bartunek contends that the IP address that is in the warrant and the IP addressed found on his computer when the search warrant was executed was not the same. However, the information the officers received prior to applying for the search warrant was accurate and there is no indication that the officers were aware that the IP address had changed. In short, there has been no showing that the affiant intentionally or recklessly included a false statement in the affidavit and application or that any false statement was necessary to the finding of probable cause. Therefore, the Court finds that Bartunek did not meet his burden for a *Franks* hearing and that Filings Nos. 47, 48 and 178 should be denied.

### 3. Bartunek's Statements to Officers and Pretrial Services (Filing No. 69)

Bartunek seeks to suppress any statements he made when the search warrant was executed on his home, at the time of his arrest and during the booking process. He also seeks to suppress any statements made in a pretrial interview conducted by Pretrial Services before his initial appearance. Bartunek's basis for suppression is that he was never read his *Miranda* rights.

The Fifth Amendment requires that *Miranda* warnings be given when a person is interrogated by law enforcement after being taken into custody. *United States v. Huether*, 673 F.3d 789, 794 (8th Cir. 2012). "To determine whether a defendant was in custody for *Miranda* purposes, a court looks to the totality of the circumstances confronting the defendant at the time of the interview, and asks whether a reasonable person in his position would consider his freedom of movement restricted to the degree associated with formal arrest." *Id*. (quotation omitted). "The inquiry is an objective one, without consideration of the participants' subjective views." *Id*. The following non-exhaustive factors inform the custody inquiry: (1) whether the suspect was informed that he was free to leave and that answering was voluntary; (2) whether the suspect possessed freedom of movement; (3) whether the suspect initiated contact or voluntarily acquiesced; (4) whether strong arm tactics or strategies were employed; (5) whether the atmosphere was police dominated; or (6) whether the suspect was placed under arrest at the end of questioning. *Id*.

It is clear that Bartunek was not in custody when he spoke to officers following execution of the search warrant. Bartunek returned home after the search was executed and was met by officers. The officers identified themselves and asked Bartunek if they could speak to him. Bartunek agreed and invited them into his home. The officers told Bartunek he was not under arrest, and Bartunek was not handcuffed or otherwise physically restrained. No weapons were drawn. Although Bartunek initially asked the officers whether he needed an attorney present, he did not specifically and unambiguously request counsel at that time. When Bartunek did make an affirmative statement that he wanted a lawyer, the officers terminated their conversation with Bartunek and left his residence. While *Miranda* requires the government respect a suspect's affirmative request for an attorney, Bartunek's initial references to an attorney were not sufficiently clear "that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States*, 512 U.S. 452, 459 (1994).

Likewise, at the time of his arrest, Bartunek was not interrogated by officers. Therefore, there was no need for a *Miranda* advisement. Interrogation only occurs "when there is express police questioning or it 'functional equivalent,' which means 'words or actions on the part of the police . . . that the police should know are reasonably likely to illicit an incriminating response from the suspect." *United States v. Bailey*, 831 F.3d 1035, 1038 (8th Cir. 2016) (quotation

omitted). The officers did not ask Bartunek any information during his arrest or on the way to Douglas County Corrections. Although Bartunek volunteered information as to why he did not answer the door, these volunteered statements do not require a *Miranda* advisement. *See United States v. Lockett*, 393 F.3d 834, 837 (8th Cir. 2005) ("Because volunteered statements of any kind are not barred by the Fifth Amendment, *Miranda* concerns do not arise in the absence of police interrogation") (quotation omitted).

At the time he was booked into Douglas County Corrections, officers asked Bartunek biographical information. (TR. 93-94.) Bartunek refused to answer these questions, asserting he was "pleading the fifth." Bartunek appears to argue that his refusal to answer and his statement that he was "pleading the fifth" should be suppressed. This argument is misplaced because questions requesting biographical data necessary to complete booking are exempted from *Miranda's* protections. *Pennsylvania v. Muniz,* 496 U.S. 582, 601 (1990).

Bartunek also requests that the Court suppress any information he provided to Pretrial Services and suggests that he should have been given *Miranda* warnings before answering Pretrial Services' questions. This argument is baseless. Pretrial Services did not ask Bartunek about any of the charges he is facing and this was not an interrogation. In addition, pretrial information is exempt from *Miranda* warnings. *See Muniz,* 496 U.S. at 601. Moreover, Bartunek signed a form which advised Bartunek that he was not required to speak to Pretrial Services. Accordingly, the Court finds that Filing No. 69 should be denied.

   **4. Motion to Dismiss (Filing No. 74)**

Bartunek contends that this case should be dismissed based on double jeopardy. The "Double Jeopardy Clause protects against multiple punishments for the same offense." *United States v. Anderson*, 783 F.3d 727, 738 (8th Cir. 2015). Double jeopardy attaches when the jury is empaneled and sworn. *Martinez v. Illinois,* 134 S.Ct. 2070 (2014). Bartunek has never been tried for the crimes he is currently charged with and jeopardy has not attached. Therefore, the Motion to Dismiss based on double jeopardy grounds will be denied.

Bartunek also contends that dismissal is appropriate based on an alleged speedy trial violation and outrageous government conduct. In support of this argument, Bartunek points out that his property was seized on May 25, 2016, but he was not arraigned until March 17, 2017. This Court broadly interprets Bartunek's argument as a claim of pre-indictment delay.

A defendant claiming a due process violation for pre-indictment delay must establish: "(1) the delay resulted in actual and substantial prejudice to the presentation of his defense; and (2) the government intentionally delayed his indictment either to gain a tactical advantage or to harass him." *United States v. Jackson,* 446 F.3d 847, 849 (8th Cir. 2006). A court will "inquire into the reasons for delay only where actual prejudice has been established." *United States v. Gladney,* 474 F.3d 1027, 1030-31 (8th Cir. 2007) (citation omitted). To satisfy the burden of showing prejudice, "the defendant must identify specific witnesses or documents lost during the delay and the information they would have provided." *Jackson,* 446 F.3d at 851. Bartunek has not shown any actual and substantial prejudice in presenting his defense, nor has he shown that the government delayed his indictment to gain a tactical advantage or harass him. Moreover, there has been no showing of outrageous government conduct. Accordingly, Bartunek's Motion to Dismiss will be denied.[7]

### 5. Motion to Suppress Photographs Taken During Execution of Search Warrant (Filing No. 80)

Bartunek again asserts that photographs should not have been taken during the execution of the search warrant on his residence. As previously discussed in Section 1 of this Findings and Recommendation, officers did not improperly photograph items in Bartunek's home. Therefore, Bartunek's request that these photographs be suppressed on this ground will be denied.

Bartunek also asserts in Filing No. 80 that the photographs should be suppressed because they have no probative value, would lead to confusion, and are prejudicial. The Court construes

---

[7] Bartunek continues to argue that the Court's decision to detain him was erroneous. His argument appears to include an assertion of ineffective assistance of counsel. The Court advised Bartunek on the record at the evidentiary hearing that it would not rehear any issues regarding the detainment decision.

this argument as a motion in limine. Therefore, this issue will be referred to United States District Judge Robert Rossiter, Jr. for decision.

### 6. Motion to Suppress Evidence Seized by U.S. Marshals at Time of Arrest (Filing No. 82)

When Bartunek was arrested, photographs were taken of dolls, guns, and children's underwear located in an open chest of drawers in Bartunek's bedroom. Bartunek claims this was an illegal search and seizure and, thus, the photographs should be suppressed.

At the time of his arrest, Bartunek was dressed only in a robe, underwear, t-shirt, and house slippers. While on the porch of his residence, Bartunek asked officers about his clothes. Due to the cold conditions, officers determined that they had to go inside the house to retrieve clothes for Bartunek. Given Bartunek's delay in answering the door, the officers determined that they needed to do a protective sweep of the residence to make sure no one else was inside. It was during this sweep that the officers noticed the dolls, guns, and children's underwear.

Officers may make a warrantless protective sweep in conjunction with an arrest where the officer reasonably believes the area inspected could harbor individuals who pose a danger to the officer and others. *Maryland v. Buie,* 494 U.S. 325 (1990). Because officers were forced to use a battering ram to open Bartunek's door, it was not unreasonable for the officers to believe that the residence could harbor individuals who posed a danger to them. All of the items the officers photographed were in plain view and the items were not removed from the residence. Bartunek's contention that photographing the items constituted an unconstitutional search and seizure has no merit. *See United States v. Espinoza,* 641 F.2d 153 (4th Cir. 1981); *Bills v. Aseltine,* 958 F.2d 697 (6th Cir. 1992); *United States v. Mancari,* 463 F.3d 590 (7th Cir. 2006).

Bartunek suggests that officers did not simply photograph items in plain view, but rather conducted a warrantless search of his residence at the time of his arrest. Bartunek's son, Paul Bartunek, testified at the evidentiary hearing that he went to his father's home the night after his arrest, February 17, 2017 at 7:30 p.m., after visiting him at the Douglas County Correctional Center. Upon entering his father's home, Paul Bartunek observed DVDs and VCR tapes

12

scattered all over the living room floor. Paul Bartunek also indicated that two dresser drawers were on the floor. (TR. 146.) Paul Bartunek did not take photographs to document his observations at that time. However, he returned to the residence and took pictures with his personal cell phone on February 26, 2017. (TR. 147.) These pictures were received into evidence. (*See* Ex. No. 167.) Paul Bartunek testified that when he returned to the residence, the house was in the same condition as it was in when he entered on February 17, 2017. (TR. 146-47.)

Having observed Paul Bartunek and heard his testimony, the Court concludes that he is not credible. The government's counsel asked Paul Bartunek to find the pictures on his cell phone, which Paul Bartunek did. Although Paul Bartunek has a computer engineering degree, he did not know how to access data on his phone which would indicate when the photographs were taken. (TR. 147-50.) He did not even appear to understand what he was being asked. The Court also notes that a day and half passed before Paul Bartunek entered his father's residence. The front door had been forced open and was to be secured by the tenant living in the basement. It is unknown whether the door was secured and/or if anyone else went through the house after officers left the house. In sum, there is no credible evidence that officers performed a warrantless search of the residence following Bartunek's arrest.

Bartunek also argues that it was not illegal for him to possess the dolls, guns, and underwear. Therefore, according to Bartunek, his possession of the items was irrelevant and the photographs should not have been taken. Relevancy is an issue for trial, the trial judge must address this issue.

Finally, Bartunek contends that Federal Rules of Evidence 403 and 404 apply to the pictures taken on the day of his arrest. The Court construes this argument as a motion in limine and will refer the issue to Judge Rossiter for decision.

13

**7. Motion to Compel Discovery (Filing No. 100) and Motion for Reconsideration and Motion to Compel (Filing No. 158)**

Bartunek's Motion to Compel Discovery (Filing No. 100) and Motion for Reconsideration and Motion to Compel (Filing No. 158) relate to Bartunek's request for Crime Stoppers information.[8] The Court conducted an *in camera* review of the Crime Stoppers information (Exhibit No. 10) to determine whether it should be provided to Bartunek. The Court has reviewed Exhibit No. 10 and finds that it is not something that the government must turn over in discovery pursuant to Crim. R. Civ. P. 16. Because it is unclear whether the government will get into the specifics of the Crime Stoppers tip at trial, the Court finds that the government does not have to turn over this information at this time. However, if the government gets into the specifics of that tip during trial, then it must turn over the document to Bartunek.

**8. Motions Referred to Judge Rossiter**

Bartunek filed a number of motions that raise issues arising under Federal Rules of Evidence 403 and 404(b), which are construed by the Court as motions in limine. These types of motions must be heard by the trial judge. Therefore, the following Filing Nos. are referred to Judge Rossiter for disposition: 70, 71, 72, and 85. The issue raised concerning the probative value of the photographs versus the photographs being prejudicial, which is contained in Filing Nos. 80 and 82, is also referred to Judge Rossiter as noted above. Due to these motions being referred to Judge Rossiter, Bartunek's recently-filed Request to Schedule (Filing No. 181) is also referred to Judge Rossiter.

Accordingly,

**IT IS HEREBY RECOMMENDED** to United States District Court Judge Robert Rossiter, Jr. that Bartunek's motions found at Filing Nos. 47, 48, 69, 74, 100, 158, and 178 be

---

[8] Filing No. 100 was filed out of time. However, the Court will consider any issues pertaining to discovery that Bartunek is entitled to, but has not received. Filing No. 158 was also filed out of time and contains a majority of issues that were previously ruled upon. However, Filing No. 158, like Filing No. 100, includes a request for Crime Stoppers information. Therefore, as they pertain to Crime Stoppers information, these motions will be considered together.

denied. It is also recommended that Filing Nos. 80 and 82 be denied in all respects except for the issue of the probative value of the photographs versus the photographs being prejudicial, which has been referred to Judge Rossiter.

Dated this 9th day of August, 2017.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge

**ADMONITION**

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.